NEW ORLEANS, NOVEMBER, 1870. 565

State, ex rel. Pontchartrain Railroad Company, v. Judge of the Seventh District Court.

No. 2886.—THE STATE OF LOUISIANA, ex rel. THE PONTCHARTRAIN RAILROAD COMPANY, v. THE JUDGE OF THE SEVENTH DISTRICT COURT.

Article 83 of the constitution gives to the Legislature express and plenary power to create as many district courts in the parish of Orleans as the public interests may require. Under this general power, the Legislature has the undoubted power to control the organization and jurisdiction of the several district courts which it finds it necessary to establish. The latter clause in this article of the constitution, which creates seven district courts for the parish of Orleans, and defines the jurisdiction of each court, is provisional only, and to last till otherwise provided. Therefore, the act No. 2, approved March 16, 1870, which creates the Eighth District Court, and defines its jurisdiction, is not in conflict with this provision of the constitution, because it divests some of the other district courts, created by the constitution of a portion of the jurisdiction granted to them by this article.

Section three of this act, creating the Eighth District Court for the parish of Orleans, gives to this court exclusive jurisdiction to entertain all injunction suits. Section four requires the judges of all the other district courts of the parish of Orleans to immediately transfer the records of all injunction suits pending in their courts, to the Eigth District Court, to be proceeded with according to law. The same section declares the judges thereof incompetent to do any other act in such cases, except to make said order of transfer. Therefore, the judge of the Seventh District Court of the parish of Orleans is without jurisdiction from and after the passage of the act creating the Eighth District Court, to try or determine any injunction suit, although the writ might have issued from his court, and the cause be still on the docket.

A writ of mandamus will not, therefore, issue from the Supreme Court, compelling the judge of the Seventh District Court of the parish of Orleans to try and determine an injunction suit which has been granted prior to the passage of the act No. 2, creating the Eighth District Court, and is still pending. In such a case the record should be transferred from the Seventh to the Eighth District Court.

APPLICATION for Writ of Mandamus. *Collens*, J., respondent. *Lea, Finney & Miller*, for relator.

HOWE, J. On the twenty-first of February, 1870, the relator commenced an action in the Seventh District Court for the parish of Orleans, against the New Orleans, Mobile and Chattanooga Railroad Company, the character of which is determined and will fully appear by the prayer of their petition, which we here transcribe :

" Wherefore petitioner prays that, considering the affidavit and bond hereto annexed, a writ of injunction issue, directed to said New Orleans, Mobile and Chattanooga Railroad Company, its officers and agents, prohibiting them from interfering with or disturbing petitioner in any manner in the use, possession and enjoyment of said two strips of land of twelve feet in width, and of said strip of fifty French feet wide, and from locating and constructing along and upon said two strips the tracks of the railroad of the said New Orleans, Mobile and Chattanooga Railroad Company, and from interfering with or disturbing in any manner the running of petitioner's engines and cars upon petitioner's said track, and from interfering with or disturbing petitioner in the use, possession and enjoyment of petitioner's said depots and buildings used for and in connection with petitioner's said railroad, and prohibiting and enjoining said New Orleans, Mobile and Chattanooga Railroad Company from applying to any other court or authority for

any writ, order or action in the premises, or relating to the subject matter of this petition, or in support of any pretensions said company may set up to the said two strips of land, each of twelve feet in width, and to the said strip of fifty French feet wide, or to interfere with the running of petitioner's said engines and cars upon petitioner's said tracks, or with petitioner's use of its said depot and buildings, and with the exercise of petitioner's privileges and powers; that said New Orleans, Mobile and Chattanooga Railroad Company be duly cited to answer hereto; that after due proceedings, petitioner have judgment that said injunction be made perpetual, with costs, and for general relief."

A preliminary order of injunction was granted in accordance with the terms of this prayer, which, on the third of March, 1870, the defendants therein, the Chattanooga Company, moved to dissolve. The trial of the motion to dissolve was begun on the fifteenth March, and continued from time to time until the twenty-first of the same month, when it was closed, and the matter taken under advisement. On the eighteenth of May, instant, on which day the cause was fixed for trial on its merits, the respondent in the proceeding now before us, the Judge of the Seventh District Court, "refused to decide the issues already tried herein, or to hear, try or decide the case on the merits, or to allow any further proceedings therein," giving as a reason that on the second of May, instant, at the suit of the Chattanooga Railroad Company v. The Pontchartrain Railroad Company, the Judge of the Eighth District Court had issued an injunction against the latter, which was, in effect, a counter injunction, and enabled the Chattanooga Company to do acts, which, by the Seventh District Court, they had been forbidden to commit, and that there was danger that if the Seventh District Court asserted its jurisdiction, a conflict would arise which might not only seriously embarrass the ministerial officers of the court, but "destroy the authority and dignity of the judiciary, and bring it, by its own act, into ridicule and contempt."

The relators applies for a mandamus to compel the respondent to proceed with and try its suit against the Chattanooga Railroad; and the argument of counsel has presented two questions for decision; *first*, of the constitutionality of the act of March 16, 1870, entitled "An Act to establish an additional district court [the Eighth District Court] for the parish of Orleans, to define the jurisdiction thereof, and to reorganize and determine the jurisdiction of the existing seven district courts for the parish of Orleans;" and, *second*, of the effect of this act, if valid, upon the suit instituted by relator against the Chattanoogo Railroad Company.

*First*—There is nothing in the nature of things which makes it improper for the Legislature to control the organization and jurisdiction of the district courts of this parish. Such a power has been freely

exercised in Louisiana, under the constitutions of 1812, 1845, 1852 and 1864. A similar authority has generally been vested in the Legislatures of our sister States, and has always been exercised by Congress, in reference to tribunals inferior to the Supreme Court of the United States. Such a control has never, so far as we are advised, been deemed of a nature dangerous to public liberty or private right; but, on the contrary, may, in many instances, be used to further both; and especially, by proper regulation, to prevent those distressing conflicts which have too often sprung up in large cities, where courts of the first instance are necessarily numerous. If, therefore, it had been the intention of the framers of the constitution of 1868 to deprive the Legislature of a control so innocent and useful—of a power which had been exercised without complaint in Louisiana for nearly sixty years— it is likely they would have so declared in unmistakable terms. Yet, when we turn to the constitution, we find this provision:

"For each district there shall be one district court, except in the parish of Orleans, in which the General Assembly may establish as many district courts as the public interests may require. Until otherwise provided, there shall be seven district courts for the parish of Orleans, with the following original jurisdiction: The First, exclusive criminal jurisdiction; Second, exclusive probate jurisdiction; Third, exclusive jurisdiction of appeals from justices of the peace; the Fourth, Fifth, Sixth and Seventh District Courts, exclusive jurisdiction in all civil cases, except probate, when the sum in contest is above one hundred dollars, exclusive of interest. These seven courts shall have such further jurisdiction not inconsistent herewith as shall be conferred by law."

We find in this language express authority conferred on the Legislature to create an eighth district court, and we are unable to perceive anything which prohibits the Legislature from changing or modifying the jurisdiction of the seven courts whose existence is thus provided for. On the contrary, by a construction which is neither forced nor unreasonable, this power of control and modification may be fairly found in the article quoted. The words " until otherwise provided " may, with entire grammatical propriety, be taken to qualify whatever succeeds them in the sentence, and the whole interpreted to mean that the determination in the constitution, both of the number of courts and of their respective jurisdiction, is provisional, and is to last until otherwise provided; and that when the Legislature shall choose to act the provisional *régime* shall cease to the extent indicated by the lawmaker.

The reasonableness of this interpretation may further appear from another consideration. There is given to the Legislature a power to increase indefinitely the number of district courts in this parish, and

every citizen will hope that the population and business of New
Orleans will grow so largely as to necessitate a still greater number of
district courts at some future day. But, with every increase of number,
the danger of conflict of jurisdiction increases, and we must, therefore,
prefer an interpretation which leaves to the Legislature, along with
the power of increase, the power of regulation and control.

Again, as remarked by the Judge of the Eighth District Court in a
recent opinion, which has been incorporated in one of the briefs in
this case, such an interpretation gives a meaning to the whole article.

" ' The General Assembly may establish as many district courts as
the public interest may require.' In order to establish a court in
furtherance of public interest, the law must vest it with jurisdiction
over subject matters of suit. But by carefully examining the article
under discussion, it will be seen that all possible jurisdiction has been
divided up between the seven courts named. To the First District
Court is granted exclusive criminal jurisdiction; to the Second,
exclusive probate jurisdiction; to the Third, exclusive jurisdiction in
certain appeals, and to the other courts, exclusive jurisdiction over all
other civil matters. In order to vest a new court with jurisdiction
over any matter the law must first deprive one or more of these courts
of somewhat of this exclusive jurisdiction. Thus the temporary
character of the investiture is determined by necessity of giving a
meaning to the entire article."

We must conclude therefore that it was not clearly beyond the
power of the Legislature, in creating the Eighth District Court, to
confer upon it the exclusive jurisdiction defined in the statute under
consideration, and for this purpose, to take from the Third, Fourth,
Fifth, Sixth and Seventh courts some portion of the power they had
theretofore exercised. The most that can be said for the arguments
against this power, is, that they go to create a doubt, and in such case
the rule has always been that the judiciary must construe the doubt in
favor of the validity of the law. Edwards v. Dupuy, 21 An. 694, and
authorities there cited.

*Second*—We have next to consider the effect of this statute upon the
relator's suit. By the third section it is provided " that the Eighth
District Court, hereby created, shall have exclusive jurisdiction, in
and for the parish of Orleans, to issue writs of injunction, mandamus
and *quo warranto*, and to entertain all proceedings, suits or contesta-
tions in which the right to any office, State, parish or municipal, is
in any way involved, * * * *Provided*, * * that this act shall
not be so construed as to prevent any judge or court from issuing an
injunction to stay or regulate the execution of any order of seizure
granted, or judgment rendered by said judge or court."

By the fourth section it is provided " that in all cases in which an
injunction shall issue from the Eighth District Court, in suits or pro-

ceedings pending before the other district courts of the parish of Orleans, it shall be the duty of the judge and clerk of such courts in which such suit or proceeding is depending, to immediately transfer the record of such suit or proceeding to the said Eighth District Court, which shall be vested with power to hear and determine such cause as if the same had been originally brought in said Eighth District Court. *Immediately upon the passage of this act* it shall be the duty of the judges of the Fourth, Fifth, Sixth and Seventh District Courts for the parish of Orleans, to transfer to the Eighth District Court for the parish of Orleans, all suits or proceedings, the jurisdiction over which is by this law vested in the said Eighth District Court. The said Fourth, Fifth, Sixth and Seventh District Courts are divested of all jurisdiction over such cases, except for the purpose of entering an order of transfer, and the said Eighth District Court shall be and is hereby vested with power to hear and determine suits or proceedings, so to be transferred, as if the same had been originally brought in the said Eighth District Court."

The relators contend that these provisions, conferring an exclusive jurisdiction to issue injunctions, and directing a transfer, do not apply to their case, because the injunction therein was issued before the law of March 16, 1870, was passed; that " the question is not what court shall issue an injunction; that has already been done; and no counter-injunction could lawfully be issued by any court in this State. The question," they say, " is, what court shall dissolve the injunction already issued, and there is nothing in the act that purports to take away the power of the Seventh District Court to maintain, control or quash its own process already issued."

We find it impossible to assent to this proposition. The intent and object of the law are to confer upon the court which it creates exclusive jurisdiction of a class of cases which had been provocative of strange and unseemly conflicts among some of the district courts of this parish. Among these cases the injunction suit seems to have occupied a prominent position in the thought of the lawgiver. Not only does he confer on the new court exclusive jurisdiction to issue injunctions (except in certain instances, of which third oppositions and suits of nullity are examples), but he provides in the fourth section that when the Eighth District Court shall issue an injunction in a suit pending before one of the other district courts, that suit shall be immediately transferred. It is then provided that immediately on the passage of the act, *all suits or proceedings*, the jurisdiction of which is thus vested in the new court, shall be transferred, and the other courts divested of all power to make any order in them, except an order of transfer. This refers, of course, to suits pending at the time the law was passed, for the transfer is to be made immediately on the passage

·of the law; and we are of opinion that the suit of·the relator was included among them. It is a suit in which the plaintiff judicially claims an injunction. He asks for a preliminary injunction and obtains it, but this process is, in its nature, conservatory and temporary, merely. He asks further for a perpetual injunction; that is to be .granted in the final judgment, if, at the time it is rendered, the judge has jurisdiction to grant it; and it is to endure for all time. But ·between the time the Judge of the Seventh District Court granted the .temporary injunction and the time he was called upon to adjudicate the question whether he should issue a perpetual injunction, his power ·to issue an injunction of any kind in such a case was taken away. His jurisdiction, "the power of him who has the right of judging," .(C. P., 76), was gone; and the relator has no right to compel him, by mandamus, to proceed with a cause in which he can not, for want of power, give the judgment which is asked for in the petition.

The relator complains of a loss of rights in this matter. "Practi-·cally," he says "we have been flanked out of position, and lost the benefit of our suit and writ by the counter injunction issued from the Eighth District Court." But this counter injunction, as we have seen, was not issued until the second of May, some six weeks after the relator had an opportunity to transfer its cause. If it did not choose to make the transfer, it can hardly complain if the Judge of the Eighth .District Court, who can not be presumed to have known of the suit, :should entertain a petition from its adversary.

We are of opinion that the cause should be transferred to the Eighth District Court; and, it is therefore ordered that the application of the relator be dismissed, with costs.